**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANETT MEDINA CARRILLO,<br><br>Petitioner,<br><br>v.<br><br>MARKWAYNE MULLIN, et al.,<br><br>Respondents. | **CASE NO.** 5:26-CV-03505-CTS<br><br>**ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS AND ORDERING RELEASE** |

## I.   INTRODUCTION

On June 24, 2026, Petitioner Anett Medina Carrillo ("Petitioner"), represented by counsel, filed a Petition for Writ of Habeas Corpus ("Petition"). (Pet., ECF No. 1.)  The Petition alleges that Petitioner is in the custody of the United States Department of Homeland Security, Immigration and Customs Enforcement ("ICE") in Adelanto, California, and that she is being held in violation of the Constitution and laws of the United States.  (*See generally* Pet.)  The Petition names as Respondents Markwayne Mullin, Secretary of the United States Department of Homeland Security ("DHS"); Todd Blanche, Acting Attorney General of the United States; David Venturella, Acting Director of ICE; Fereti Semaia, Warden, Adelanto ICE Processing Center; and Ernesto Santacruz, Acting

Field Office Director of the Los Angeles ICE Office ("Respondents").  (Pet. 1.[1]) On July 2, 2026, Respondents filed an Answer to the Petition.  (Ans., ECF No. 7.) On July 6, 2026, Petitioner filed her Reply.  (Rep., ECF No. 8.)  For the reasons set forth below, the Court GRANTS the Petition as to the Second Claim for Relief, dismisses the remaining claims without prejudice as moot, and ORDERS that Petitioner be released from custody immediately.

## II.    BACKGROUND

The Petition[2] alleges that Petitioner is a citizen of Mexico and that she is lawfully seeking asylum in the United States after fleeing gender-based violence and repeated death threats.  (Pet. ¶ 2; LeRoy Decl. ¶ 4.)  Petitioner entered the United States on November 15, 2024.  (Pet. ¶ 2; LeRoy Decl. ¶ 5.)  She was apprehended and detained for seven days.  (Pet. ¶ 3; LeRoy Decl. ¶ 5.)  After a credible fear interview with an asylum officer, she was found to have both a credible fear of being tortured or persecuted if forced to return to Mexico and a significant possibility of establishing eligibility for asylum.  (Pet. ¶ 3; LeRoy Decl. ¶ 5; Pet., Ex. B.)  On or about November 23, 2024, Petitioner was interviewed by a DHS official, who determined that she was neither a flight risk nor a danger to the community.  (Pet. ¶ 3; LeRoy Decl. ¶ 6.)  On November 23, 2024, Petitioner was paroled into the United States; she was not required to post bond.  (Pet. ¶ 3; LeRoy Decl.¶ 6; Pet., Ex. B.)  She was placed on electronic monitoring with an ankle

---

[1] Pinpoint citations refer to paragraphs and, where none, to the page numbers in the CM/ECF-generated headers of filed documents.

[2] The Petition attaches the Declaration of Carrie LeRoy ("LeRoy Declaration") and the following exhibits: Petitioner's initial parole authorization dated November 23, 2024; Petitioner's Notice to Appear ("NTA") dated November 23, 2024; Petitioner's Order of Release on Recognizance ("OREC") dated March 20, 2025; the Executive Office of Immigration Review ("EOIR") automated website information for Petitioner's case; and letters of support for Petitioner.  (LeRoy Decl., ECF No. 1-1; Pet., Exs. A–E, ECF No. 1-2.)

bracelet and instructed to report regularly for check-ins with ICE. (LeRoy Decl. ¶ 6.) Petitioner was issued an NTA that directed her to appear at the Van Nuys Immigration Court on March 25, 2025. (LeRoy Decl. ¶ 6; Pet., Ex. B.)

After her release, Petitioner was required to check in with ICE monthly. (LeRoy Decl. ¶ 7.) After several months, due to technological failures with ICE's electronic reporting system, ICE increased the frequency of her check-ins to weekly. (LeRoy Decl. ¶ 7.) Then on March 20, 2025, DHS issued an OREC releasing Petitioner on her own recognizance subject to the conditions set forth therein, without any requirement that she post bond. (Pet. ¶ 5; LeRoy Decl. ¶ 7; Pet., Ex. C.)

While on parole, Petitioner complied with all conditions of her release and resided with her aunt in Norwalk, California. (Pet. ¶ 6; LeRoy Decl. ¶¶ 6–7, 11, 13; Pet., Ex. C.) Respondents have not alleged in any immigration proceedings or notices to Petitioner that she has a criminal record, is a national security risk, or poses a flight risk or threat to the community. (Pet. ¶¶ 6, 50; LeRoy Decl. ¶ 12.) There are no records to suggest that Petitioner has engaged in any criminal conduct or intends to flee or otherwise disregard her obligations under immigration law. (Pet. ¶¶ 6, 50.) Multiple letters of support demonstrate that Petitioner is a well-regarded, law-abiding woman who has integrated into the community and has strong ties in the United States. (Pet. ¶¶ 6, 50; LeRoy Decl. ¶ 16.e; Pet., Ex. E.)

On February 3, 2026, ICE re-arrested Petitioner without notice, cause, or a pre-detention hearing when she appeared for her scheduled ICE check-in appointment. (Pet. ¶¶ 7, 49; LeRoy Decl. ¶ 9.) She was not afforded an opportunity to contest the basis of the revocation of her parole and was not provided with individualized notice identifying any changed circumstances in her situation or suggesting that she was a flight risk or a danger to others or had failed to comply with the conditions of her parole. (Pet. ¶¶ 8, 10–11; LeRoy Decl. ¶ 13.) She has now been held in custody for six months.

In their Answer, Respondents do not deny or contest any of the facts alleged in the Petition.  (*See generally* Ans.)  Nor do they present any additional facts in the Answer, though they do attach two unverified exhibits:  Form I-213, Record of Deportable/Inadmissible Alien, and Form I-200, Warrant for Arrest of Alien. (Ans., Exs. A and B, ECF No. 7-1.)

### III.    PETITIONER'S CLAIMS

Petitioner challenges her detention on five grounds: (1) Violation of the Fifth Amendment to the United States Constitution (Substantive Due Process—Detention) (Pet. ¶¶ 52–55); (2) Violation of the Fifth Amendment to the United States Constitution (Procedural Due Process—Detention) (*id.* at ¶¶ 56–61); (3) Violation of the Fourth Amendment to the United States Constitution (Unlawful Arrest) (*id.* at ¶¶ 62–66); (4) Violation of the Administrative Procedure Act  (*id.* at ¶¶ 67–71); and (5) Violation of the Immigration and Nationality Act (*id.* at ¶¶ 72–77).

### IV.    LEGAL STANDARD

Writs of habeas corpus may be granted by the federal courts to noncitizens in the custody of immigration authorities.  28 U.S.C. § 2241(c)(3) ("The writ of habeas corpus" extends to individuals "in custody in violation of the Constitution or laws or treaties of the United States."); *Doe v. Garland*, 109 F.4th 1188, 1194 (9th Cir. 2024) (holding that petition challenging alien's detention without bond hearing fell within the "core of habeas").  The writ is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004).

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law.  U.S. Const. amend. V.  "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*,

533 U.S. 678, 693 (2001). "'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. The government therefore may detain individuals outside of the criminal context only "in certain special and 'narrow' nonpunitive 'circumstances.'" *Id.* (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)).

As the Supreme Court has repeatedly held, under most circumstances, "the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original) (collecting cases). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). Thus, while "in some circumstances the initial decision to detain or release an individual may be within the government's discretion, the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release].'" *Id.* (alterations in original) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). The liberty of a person who has been released from government custody is valuable and falls within the protection of the Due Process Clause. *Morrissey*, 408 U.S. at 482; *Pinchi*, 792 F. Supp. 3d at 1032.

///

5

Courts generally apply the three-part test articulated in *Mathews v. Eldridge*, 424 U.S. 319 (1976), to determine what procedures are constitutionally sufficient to protect a liberty interest. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206–07 (9th Cir. 2022) ("assuming without deciding" that *Mathews* applied and applying test in immigration detention context); *Pinchi*, 792 F. Supp. 3d at 1033, 1033 n.2 (discussing Ninth Circuit's treatment of *Mathews*); *Perez Bueno v. Janecka*, No. 5:25-CV-03376-CAS-BFM, 2026 WL 309934, at *3 (C.D. Cal. Feb. 5, 2026) (applying *Mathews* test and ordering immediate release of noncitizen asylum applicant previously released on own recognizance by DHS who was detained again without pre-detention notice or hearing). Under that test, courts consider (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

## V.    DISCUSSION

Among other claims, Petitioner alleges a violation of her Fifth Amendment procedural due process rights arising from the revocation of the parole granted to her by DHS shortly after her initial entry into the United States. (Pet. ¶¶ 56–61.) In many recent decisions, courts have granted habeas relief to petitioners in similar circumstances, finding that immigration authorities violated due process by re-detaining, without notice or an opportunity to be heard, noncitizens who had been detained by ICE sometime after entering the United States but were then released from custody. *See, e.g.*, *Sierra Bernal v. Janecka*, No. 5:26-CV-03116-DMK, 2026 WL 2138827, at *1 (C.D. Cal. July 17, 2026) (granting habeas petition filed by noncitizen from Colombia who had been detained by DHS when she entered the

United States in April 2023, was then released and placed in an Alternatives to Detention supervision program, but was later re-detained after appearing for an immigration court hearing without notice that her release was being revoked or opportunity to contest her re-detention); *Singh v. Janecka*, No. 5:26-CV-01466-AYP, __ F. Supp. 3d __, 2026 WL 1334832, at *2, 6 (C.D. Cal. May 8, 2026) (granting habeas petition filed by noncitizen from India who had been detained by DHS when he entered the United States in June 2024, was then released and placed in an Alternatives to Detention supervision program, but was later re-detained after appearing for an immigration court hearing without notice of the reasons for his arrest).  Consistent with these decisions, and as discussed below, the Court finds that Petitioner's re-detention—without prior notice or a meaningful opportunity to be heard—violates due process and merits relief.

**A.      Petitioner Has a Protected Liberty Interest Under the Due Process Clause**

Courts "examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State" and "the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989).  With respect to the first question, it is well-established that freedom from government detention is a protected liberty interest.  *See Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects.").

Particularly relevant here, the liberty of a person who has been released from government custody is valuable and falls within the protection of the Due Process Clause.  *Morrissey*, 408 U.S. at 482.  A parolee "relie[s] on at least an implicit promise that parole will be revoked only if he fails to live up to the parole

conditions." *Id.* The revocation of parole undoubtedly "inflicts a grievous loss on the parolee," and as such, a parolee possesses a protected interest in his continued liberty. *Id.* "Just as people on preparole, parole, and probation status have a liberty interest, so too does [petitioner] have a liberty interest in remaining out of custody on bond." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019). "[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, *after that individual is released from custody she has a protected liberty interest in remaining out of custody*." *Pinchi*, 792 F. Supp. 3d at 1032 (emphasis added). Thus, "[w]hen DHS released [Petitioner] on an OREC after determining that [s]he was [neither] a danger nor a flight risk, it conferred a conditional liberty interest that may not be withdrawn without constitutionally sufficient process." *Singh*, 2026 WL 1334832, at *2. Accordingly, the Court concludes that Petitioner has a protected liberty interest in her continued freedom from custody.

## B.     Petitioner's Re-Detention Violates Due Process

As Petitioner has a protected liberty interest, the Court must next determine what procedural protections are due to protect that interest, balancing the *Mathews v. Eldridge* factors: (1) the private interest at stake; (2) the risk of erroneous deprivation; and (3) the government's interest. *Mathews*, 424 U.S. at 335; *Pinchi*, 792 F. Supp. 3d at 1033; *Singh*, 2026 WL 1334832, at *2.

With respect to the first *Mathews* factor, Petitioner has, without any doubt, a liberty interest—remaining out of custody—that is substantial. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Numerous recent decisions have found that a petitioner's interest in remaining out of ICE custody after release under supervision weighs strongly in that petitioner's favor when balancing the *Mathews* factors.

*E.g.*, *Singh*, 2026 WL 1334832, at *3–4. There is no reason to reach a different result here. Detained shortly after entering the United States, Petitioner was held for seven days, then released after DHS found that she was not a flight risk and did not present a danger to the community. (Pet. ¶ 3.) Thereafter, she lived free from custody for well over a year, during which time she established significant community ties. (Pet. ¶¶ 6–7.) While Petitioner was subject to supervision "during this time, 'a person who is in fact free of physical confinement—even if that freedom is lawfully revocable—has a liberty interest that entitles [her] to constitutional due process before [s]he is re-incarcerated.'" *Singh*, 2026 WL 1334832, at *3 (quoting *Hurd v. D.C., Gov't*, 864 F.3d 671, 683 (D.C. Cir. 2017)). Further, Respondents do not argue that Petitioner does not have a substantial liberty interest in remaining out of custody. (*See generally* Ans.) Thus, the Court finds that the first *Mathews* factor weighs strongly in Petitioner's favor.

The second factor also weighs in Petitioner's favor. The risk of an erroneous deprivation of a liberty interest is high when no process is provided prior to the deprivation of that interest, and the Supreme Court therefore "usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon*, 494 U.S. at 127. Thus, many recent decisions have found the risk of an erroneous deprivation of a liberty interest to be high for noncitizens paroled into the United States whose parole was revoked without pre-deprivation process. *See, e.g.*, *Rankbirsingh v. Giles*, No. 5:26-CV-00907-FLA (PVC), 2026 WL 1455421, at *6 (C.D. Cal. May 20, 2026) ("The court finds the risk of an erroneous deprivation of Petitioner's liberty interest was substantial based on Respondents' failure to provide any notice of, explanation for, or opportunity to be heard regarding Petitioner's arrest and re-detention, and the revocation of his bond."); *Perez Bueno*, 2026 WL 309934, at *4 (finding that "the risk of erroneous deprivation of liberty is high absent the procedural safeguard of a pre-deprivation hearing before a neutral decisionmaker); *Hasratyan v. Bondi*, No. 5:26-CV-00210-

9

MCS-ADS, 2026 WL 288909, at *3 (C.D. Cal. Feb. 2, 2026) ("There is an unacceptably high risk that the government would erroneously deprive—or already has erroneously deprived—Petitioner of her liberty interest absent a pre-detention hearing."). Here, Petitioner was provided with no pre-deprivation notice of the reasons for her re-detention or opportunity to contest those reasons. (Pet. ¶¶ 7–8.) Respondents do not dispute that Petitioner was not provided individualized reasons for the revocation of her parole or the opportunity to contest this revocation upon her re-arrest on February 3, 2026, when she reported as required to a scheduled ICE check-in appointment. (*See generally* Ans.) Accordingly, the Court finds that the second *Mathews* factor weighs strongly in Petitioner's favor

Finally, the third *Mathews* factor also weighs in Petitioner's favor. "Although the Government has a legitimate interest in enforcing the immigration laws, that interest does not overcome the Fifth Amendment's requirement that constitutional procedural safeguards be provided before re-detaining a person who has been safely residing in the community." *Singh*, 2026 WL 1334832, at *5. Respondents' interest in re-detaining Petitioner without notice, reasoning, and an opportunity to be heard is low. *See Pinchi*, 792 F. Supp. 3d at 1036 ("[T]he government has articulated no legitimate interest that would support arresting [petitioner] without a pre-detention hearing."); *Ortega*, 415 F. Supp. 3d at 970 ("If the government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). "[A]s many other courts have recognized, there is no meaningful countervailing government interest that supports detaining previously paroled noncitizens like petitioner without a pre-detention hearing." *Hasratyan*, 2026 WL 288909, at *4. Further, Respondents here offer no argument that might constitute a meaningful, countervailing government interest to weigh against Petitioner's right to due process before being re-detained. (*See generally* Ans.)

///

In fact, Respondents have not just failed to offer any argument in opposition to any of the elements of Petitioner's due process claim—they fail to acknowledge that Petitioner has raised a due process claim at all.  (*See generally* Ans.)  The Answer consists solely of a statement that "Respondents oppose immediate release," followed by three paragraphs arguing that Petitioner is a member of the class certified in *Maldonado Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM (C.D. Cal. filed July 23, 2025) ("*Maldonado Bautista*"), and as such, is entitled only to the relief of a bond hearing.  (Ans. 2–3.)  However, Petitioner does not appear to be a member of the *Maldonado Bautista* class, as that class is defined to include only noncitizens who were not apprehended on arrival.  *See Maldonado Bautista*, 813 F. Supp. 3d 1084, 1127 (C.D. Cal. 2025).  Nor has Petitioner either claimed to be a member of that class or requested a bond hearing.  (*See generally* Pet.; Rep. 2–3.)  The Answer therefore appears largely irrelevant to the issues raised in the Petition.

To the extent there is an unsworn, unverified document attached to the Answer as an exhibit that references missed check-in appointments in one month in the Fall of 2025, the Answer itself does not reference this information at all, let alone argue that it would have justified re-detaining Petitioner without providing her with notice of those alleged violations or a chance to rebut them.  (*See generally* Ans.)  Further, even if these minor violations occurred:

> it does not "necessarily follow" from the allegation of a violation "that Petitioner can be detained for those violations without a hearing.  That the Government may believe it has a valid reason to detain petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process." *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025).  Here, it does not appear that Petitioner was notified of the reasons for his detention, or given a chance to dispute that such violations occurred or to persuade the decisionmaker that those violations did not make him a

flight risk.  Notice and an opportunity to respond "at a meaningful time and in a meaningful manner" is the essence of procedural process, *Mathews*, 424 U.S. at 333, and it was jettisoned here.

*Joaqui v. Warden of Adelanto Det. Ctr.*, No. 5:26-cv-03346-BFM, 2026 U.S. Dist. LEXIS 143753, at *10–11 (C.D. Cal. June 26, 2026).

It thus appears, from the record before the Court, that:  (1) Petitioner had a substantial private liberty interest in remaining out of custody; (2) the risk of erroneous deprivation of this liberty interest was high absent the procedural safeguard of a pre-deprivation hearing before a neutral decisionmaker; and (3) no countervailing government interest has been identified that could outweigh the need to protect Petitioner's liberty interest with a pre-deprivation hearing.  The Due Process Clause therefore entitled Petitioner to notice and a hearing *prior* to any re-arrest or detention.  As no suggestion has been made that such process was provided prior to her February 3, 2026 re-detention, that re-detention violated the Due Process Clause.  *See Singh*, 2026 WL 1334832, at *5 (finding that "Respondents' re-detention of Petitioner . . . without adequate pre-deprivation process, violated due process").

## C.    Remedy

As discussed above, Petitioner has shown that her due process rights were violated.  As many other courts have held in recent months, the appropriate remedy for such a violation is to place Petitioner in the position she was in prior to the violation—that is, she should be released from custody under the same conditions that governed her prior release.  *E.g.*, *Badalyan v. Bondi*, No. ED CV 26-1401 FMO (JDE), 2026 WL 1365087, at *1 (C.D. Cal. May 15, 2026); *Singh*, 2026 WL 1334832, at *6.  The Court therefore "concludes that 'Petitioner's release is necessary to return [her] to the status quo.'"  *R.N.G. v. Semaia*, No. 5:26-CV-2839-DSR, __ F. Supp. 3d __, 2026 WL 2089544, at *8 (C.D. Cal. July 14, 2026)

12

(quoting *Nazarian v. Noem*, No. 5:25-cv-2694-KK-ADS, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025)).  "Return to the status quo similarly means [the] return to Petitioner [of] any personal property and documents seized from [her] at the time of [her] detention."  *Id.*

Petitioner has also requested permanent injunctive relief barring Respondents from re-arresting or re-detaining her "without an individualized pre-deprivation notice of the basis for the revocation of her parole and a hearing before a neutral arbiter at which Respondents must provide by clear and convincing evidence of a material change of circumstances regarding Petitioner's flight risk or danger to others."  (Pet. 29–30.)  Again, the Answer fails to address this claim, essentially conceding that some form of injunctive relief is merited here.  Accordingly, the Court ENJOINS Respondents from re-detaining Petitioner absent a pre-deprivation hearing before a neutral decisionmaker at which the government establishes by clear and convincing evidence that detention is appropriate to prevent her flight or to protect the public.[3]

///

///

---

[3] Petitioner also requests an injunction prohibiting Respondents from "placing any monitoring devices, such as an ankle monitor, on Petitioner's person in violation of her constitutional rights without an individualized notice of the basis for such device and a hearing before a neutral arbiter at which Respondents must provide by clear and convincing evidence of a material change of circumstances regarding Petitioner's flight risk or danger requires such monitoring."  (Pet. 30.)  While the Court agrees that returning Petitioner to the status quo in effect prior to Respondents' violation of her due process rights requires that she be released under the same conditions of release that were in effect prior to her February 3, 2026, re-detention, Petitioner has not provided a legal or factual basis for restraining Respondents' ability to modify those conditions of release in the future.  The Court is not inclined to dictate, with the level of specificity requested, the procedure for modifying Petitioner's conditions of release in the future that would be necessary to comply with due process.  The Court therefore declines to grant such relief.

13

## VI.   CONCLUSION

IT IS THEREFORE ORDERED THAT:

1.  The Petition is GRANTED as to the Second Claim for Relief, and the remaining claims are dismissed without prejudice as moot;

2.  Respondents are ORDERED TO RELEASE Petitioner Anett Medina Carrillo (A 221-065-123) from custody within 24 hours of entry of this Order under the same conditions of release that were in place prior to February 3, 2026;

3.  Respondents are ORDERED TO RETURN to Petitioner all documents, identification cards, and other items confiscated by Respondents when Petitioner was re-detained;

4.  Respondents are ORDERED TO FILE a Notice of Compliance, notifying the Court that Petitioner has been released, within three calendar days from the date of entry of this order;

5.  Respondents are ENJOINED, until and unless a final order of removal is entered against Petitioner, from re-detaining Petitioner absent a pre-deprivation hearing before a neutral decisionmaker at which the government establishes by clear and convincing evidence that detention is appropriate to prevent her flight or to protect the public; and

6.  Judgment will be entered upon the filing of the Notice of Compliance.[4]

DATED:  August 3, 2026

_____
CHRISTINA T. SHAY
UNITED STATES MAGISTRATE JUDGE

---

[4] If Petitioner wishes to seek attorney's fees or costs, she may do so pursuant to this Court's Local Rules.

14